FILED
DISTRICT COURT OF GUAM
AUG - 1 2005
MARY L.M. MORAN
CLERK OF COURT

**IN THE DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

* * *

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) CRIMINAL CASE NO. CR05-00039-004
)
)
SEAN MICHAEL COLE, )
a/k/a SHAWN COLE, )
)
Defendant. )
______________________________)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOAQUIN V.E. MANIBUSAN, JR.

Magistrate Judge

**MOTION FOR CONTINUANCE OF TRIAL**

**FRIDAY, JULY 1, 2005**

ORIGINAL



Case 1:05-cr-00039 Document 62 Filed 08/01/2005 Page 1 of 19

**APPEARANCES:**

FOR THE PLAINTIFF: UNITED STATES ATTORNEY'S OFFICE
BY: KARON V. JOHNSON, Esq.
ASSISTANT UNITED STATES ATTORNEY
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910

FOR THE DEFENDANT: HOWARD TRAPP INCORPORATED
BY: HOWARD G. TRAPP, Esq.
139 Chalan Santo Papa
200 Saylor Building
Hagatna, Guam 96910

Also present: G. Patrick Civille, Esq.

HAGATNA, GUAM; FRIDAY, JULY 1, 2005; 2:30 P.M.

* * *

THE CLERK: Criminal case 05-00039, United States of America versus Sean Michael Cole, also known as Shawn Cole, motion for continuance of trial.

Counsel, please state your appearances.

MS. JOHNSON: Good afternoon, Your Honor. Karon Johnson for Marivic David.

MR. TRAPP: Howard Trapp for Defendant Sean Michael Cole, Your Honor; Mr. Cole is present with me at counsel table.

THE COURT: All right. The matter is before the court today based upon a motion for continuance. Mr. Trapp?

MR. TRAPP: May I use the podium, Your Honor?

THE COURT: Yes, you may.

MR. TRAPP: Otherwise I may not get recorded, and the court may miss a few of these words on its record.

I respectfully submit that for the reasons given under the Speedy Trial Act in the motion, that this motion simply has to be granted for the following reasons:

My client was appointed counsel, and he advises me that for the about 45 days that this case



Case 1:05-cr-00039 Document 62 Filed 08/01/2005 Page 3 of 19

has been going on and he's been in custody, that his counsel never visited with him up at Post 6 up at DOC where he is being detained.

But there's a third, but there's a greater problem that impacts on why he has to be given a continuance at this time, and that is, some place along the line he decided that he wished to have private counsel. And the rules up at Post 6 apparently are that you can't make any phone calls. They will allow you to telephone your attorney, but it has to be your attorney of record. And I wish the court would look into this, because this makes no sense at all; they will not allow you to take the telephone directory, for example, and look in the Yellow Pages and phone a different attorney. They won't let you phone anybody but your attorney of record.

So, for example, my client right now, if he has a quarrel with the way I'm handling this case and doesn't really want to discuss it with me but would like to discuss how I'm handling this case with another attorney and weigh his options, he's stuck with me, there's no way he can phone a different attorney.

He told me something like this when I first visited with him, but after I got into the case, I think it was very apparent that what he was telling me



Case 1:05-cr-00039 Document 62 Filed 08/01/2005 Page 4 of 19

was absolutely true because he wasn't -- after I had filed my substitution, approved by the court, and served it on counsel, he still wasn't able to phone me. And I checked with the First Assistant United States Attorney, Mr. Stoddard, who said he would look into it, and he was good enough to do that. And it turned out after he consulted with the clerk's office that I had been lax in not serving a copy of my substitution on the marshal's office. In other words, in order for him to phone me as his attorney, he would have -- my name would have to be on some kind of a list.

But the point that this makes is, he's not free to just phone any old attorney. He had to prove, and the marshal's office had to know that I was the attorney of record. And I think that something as a general matter should be done by the court about this, because people are entitled to the attorney of their choice, and they can't choose attorneys if they can't phone attorneys. And I don't think that there's any particular security breach, no matter what the case is, if people are allowed to phone attorneys whose names and numbers are recognized by the administration up at DOC.

So, eventually, I got a call from one of his relatives way off in continental United States; somehow

they felt that he should have other counsel. I was able to phone in and talk to him; I've talked to him, and the rest you can see, I've been retained.

So because he was not able to even -- so if there were to be any objection that this motion comes close on the date of the commencement of the trial, I would say that what I've just recited is certainly the answer to that. And he wasn't able to get in touch with new counsel until I recently was retained by him, and his court-appointed counsel at the time was off island, is not back yet.

Also, for me to prepare for trial or to prepare what we're going to do at the trial it's necessary for me to have some kind of a open communication back and forth with the prosecutor so we can weigh our options, and the prosecutor has been off island since the day that I believe -- at least just before my substitution was approved by the court and to the present time and until next week.

I would like to call the court's attention, because I know the court is concerned about these things, that my client for some reason is in something called Post 6 at DOC. I would call it "the hole". He's been there for 45 days or so. And up there there's very little air conditioning. He gets out of

his cell once every other day if he's lucky; sometimes he doesn't -- sometimes he doesn't get out that often. But he's supposed to get out of his cell once every other day. All the other times he's locked in that cell 24/7, except for those couple of times he gets out. And when he gets out, he gets out for 20 minutes to a half hour. Does he get any fresh air? No, he's taken to a dayroom, and he hasn't seen the sun I guess until he had this hearing today, and he just sits in that cell day after day.

Well, this is punishment, I submit to the court. If there were any justifiable reason for him being under these circumstances, then it might be allowed, but I can't believe that anything has been put forward to the court when it decided to detain my client to justify this. And if it exceeds what is necessary for reasonable conditions of detention, which would be to see that he is no threat to the community or that he will not flee, then it has never been articulated. And to the extent that it exceeds those, it's a violation of due process, because you cannot-- the Supreme Court has said at least a number of times-- you cannot punish people before they are convicted. And that is what is happening to my client, he's being severely punished.

And my understanding of Post 6, amongst other things, it's used for punishment; that is, you break the rules up at DOC if you are a regular inmate, that they would put you into Post 6 for a certain amount of time as punishment. So there's no question but what it is punitive.

He's not allowed to call anybody, except now he can call me. As I said, he can't call an alternative attorney for a second opinion about anything, and he can't call his parents. I don't think his parents are any danger to the -- or any security breach here. His parents have talked to me, they seem like very nice people; they are the ones who made an arrangement to retain me. And we would certainly request that he be allowed to call his parents, that he be allowed to indiscriminately call attorneys, at least.

When I phone up there, the administration probably doesn't have to do this, but they are good enough to bring the detainee to the phone and let me talk to him, which saves me a trip up there. And I certainly have no complaints about that. But in order for him to get to the phone, they took him from his cell and they shackled him to walk him to the phone to talk to me. When he gets out for this one half to 20

minutes in the dayroom up there, I don't know what that's worth very much, they shackle him. He is never out of that cell but what he is shackled, and I can't see that he is any different from any of a couple of dozen defendants in routine drug cases such as this that I've represented over the years, and who I've always usually visited down in the detention in Agana, who are sort of a part of the detainee population.

If you look for a reason for this, because I've had this problem in one other Superior Court case, the only reason I was given for that is, "Well, we don't have enough room in detention in Agana". And there's something called Post 5, and Post 5 is not really punitive, it's more like detention in Agana, and we don't have any more room in Post 5. But I submit to the court that certainly the United States of America can make arrangements to not punish people who are awaiting trial and can find some room to put them some place, or else perhaps they should just cut them loose.

That's my submission, Your Honor. And I wish the court would do two things: One, grant the extension, the continuance, because it's absolutely necessary. It is not for the purposes of delay for the reasons that I've said; and to please see that my client is no longer in this Post 6 situation, that he's

treated like any other detainee unless the government can show cause why he has to be in a cell all the time and shackled when he's not in a cell. And for heaven's sakes, that he be allowed to call his parents.

Thank you, Your Honor.

THE COURT: Does the government wish to respond?

MS. JOHNSON: If I may, Your Honor.

I notice, this, of course -- thank you -- is not my case, but I notice going through the file that Mr. Civille has also filed a notice of hearing and motion for appointment of expert seeking the services of a Dr. Stewart. And he mentions a case file, not by name, but it happens indeed to be my case, John Gorman has secured the services of Dr. Stewart to come out, I think within the next 45 days, concerning the Ruiz matter. And it would appear that Mr. Civille is indeed properly concerned about his own client and that it would have merit to grant his appointment of an expert also, and that necessarily is going to mean a continuance as it concerns this particular defendant, Ms. Rodriguez.

And so I think that indeed a continuance based on Mr. Trapp's merit alone is appropriate. And, indeed, there are other things going on with the case

that have to be addressed also.

THE COURT: In terms of the other request that Mr. Trapp has made --

MS. JOHNSON: Excuse me?

THE COURT: In terms of the other request that the Mr. Trapp has made to the court, does the government want to respond to that?

MS. JOHNSON: Oh, well, the marshal's office is the one that decides where people go. I do know in terms of phone calls I will get a form listing the people that a prisoner wants to call, and we just routinely sign off on that. So that forms needs to come to the marshals, then they fax it over to us, and we immediately respond to it.

The Post 6 matter I know nothing about, I'm sorry.

THE COURT: Mr. Civille, you're sitting there; do you wish to say anything?

MR. CIVILLE: No, Your Honor. When counsel mentioned the motion that I have before the court, I thought I'd come up in case the court had any questions for me.

THE COURT: Well, that motion is pending, and just as soon as some information is received from co-counsel, it would be granted -- their request would


Case 1:05-cr-00039 Document 62 Filed 08/01/2005 Page 11 of 19

be granted by the court.

MR. CIVILLE: Thank you. Your Honor, I did bring a supplemental declaration which I was going to file. And I have not been able to reach Dr. Stewart; I don't know if he's on a short holiday. Mr. Gorman has confirmed to me that the Federal Public Defender is bringing Dr. Stewart to Guam, and I understand now from Ms. Johnson that the government also understands that Dr. Stewart will be coming within the next 45 days. And that is the extent of the information that I have on his arrival.

THE COURT: All right.

MR. TRAPP: May I respond to what was said by the government about the marshals and all, Your Honor?

THE COURT: Mr. Trapp, yes.

MR. TRAPP: Well, apparently the policy is, nobody makes any phone calls no matter what the situation is; I don't know why that is. I mean, these are people who were on the streets, the only reason that they're being detained is because there's a presumption of dangerousness and a presumption of fleeing, which has never really been, I don't think, addressed in my case one way or the other.

And we're not raising the appropriateness of detention as such at this time because we're not

just -- we're just not prepared to do it, but I question -- and I say I question, I don't mean this rhetorically, I don't know, do the marshals really know when they turn these people over to DOC on their contract who is down at detention and who is at Post 6, who is mixing in with the prison population down there, and who is in the hole up there in Post 6? I really doubt it, Your Honor, but I don't know. I don't think that the marshals have any particular reason, without directions from the U. S. Attorney's Office, to put my client in a situation like this. And from what we hear from Ms. Johnson, she doesn't seem to have anything in her file which would indicate that the U.S. Attorney's Office has ever asked for anything like that.

MS. JOHNSON: Indeed, Your Honor, if I may interject. I cannot remember ever our office asking a person to be placed in a particular location. To us it's a one hundred percent administrative matter. And indeed, in this case, we certainly did not ask that.

MR. TRAPP: So what the government is saying, Your Honor, is it's ultimately the responsibility of the court, and I know that the court probably hasn't known this until it's come to the court's attention, and of course it's my responsibility to bring it to the court's attention--I have done that. And I would


Case 1:05-cr-00039 Document 62 Filed 08/01/2005 Page 13 of 19

respectfully request that the court see if there might be some special reason -- and none has been articulated to me.

The reason I'm always given for a situation such as this is, "Well, we ran out of room down at the detention so we sent them up there. We don't have any room in Post 5, and so we put them in Post 6." Well, okay, they're in Post 6. Why are they shackled, why are they in a cell for 48 hours before they get to shuffle out in their shackles to a dayroom and shuffled back again for 20 minutes to 30 minutes? It's because, well, that's the rules for Post 6. I say, well, I understand Post 6 has its reason for being, but on the other hand, since you're just using it as a repository for, you know, excess prisoners, why does my client have to go through these particular procedures when the reasons that you have for even establishing Post 6 don't obtain as to them. Well, because that's the rule. That's the rule; if you're in Post 6, that's what happens to you. If you're downtown, you don't have to do that. It doesn't make any sense. It's a --

Excuse me, Your Honor.

I didn't intend on getting this involved, but, and I -- the Supreme Court in a case Schall, S-C-H-A-L-L, against Martin, at 467 US 253, 104 Supreme

Court 2403 had, in a different, somewhat different context having to do with a juvenile procedures I believe in the state of New York, nevertheless, said this:

Of course the mere invocation of a legitimate purpose will not justify particular restrictions and conditions of confinement amounting to punishment. It is axiomatic that "due process requires that a pretrial detainee not be punished". Even given, therefore, that pretrial detention may serve legitimate regulatory purposes, it is still necessary to determine whether the terms and conditions of confinement are in fact compatible with those purposes. "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Absent a showing of an express intent to punish on the part of the state, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.

The purpose here is only make sure my client

shows up at trial and he's not running around the community; that's the only purpose I think for which he's been detained. He is not a permanent resident of Guam, he was here working on a contract up at Andersen, and he's clearly, clearly being punished, and it is in derogation of the due process clause. I would ask that the court look into that.

Thank you, Your Honor.

THE COURT: All right. Well, first of all, as to the defendant's request that the court look into conditions of his pretrial detention, I'm not able to do anything about that until I get back; I'm leaving this weekend, so when I get back I'll see what can be done in terms of --

MR. TRAPP: Thank you, Your Honor, that's quite acceptable. Thank you very much.

THE COURT: With regards to his motion for a continuance, the court notes that there are other -- there is another pending motion which might also affect when this case goes to trial.

But with regards to the specific motion before the court by the Defendant Sean Michael Cole, defendant having moved for an order that commencement of his trial herein be continued, and it appearing to the court based on the reasons mentioned to the court by



Case 1:05-cr-00039 Document 62 Filed 08/01/2005 Page 16 of 19

his attorney who has recently been retained, the court finds that the ends of justice served by granting such a continuance outweighs the best interests of the public and the defendant himself in a speedy trial.

The court, therefore, finds that the failure to grant such a continuance as requested would deny counsel for the Defendant Cole a reasonable time necessary for effective preparation of this case, taking in account due diligence. The court will therefore order that this trial be continued.

I'm going to continue the trial to August 30th, Tuesday, at 9:00 a.m., that's the first opportunity for a visiting judge to be here, and that would be before Judge James Otero, from the Central District of California. So the trial is hereby set for August 30, 2005, at 9:00 o'clock in the morning, again, before Judge James Otero.

And the court will also request that the matter be placed on pretrial conference before the judge when he gets in on Monday, August 29, at 11:00 in the morning.

And the court having granted the continuance for the reasons aforesaid, the number of days from today to the date of the trial are hereby excluded for purposes of the Speedy Trial limitations.

Any other requests at this point regarding tis case?

MR. TRAPP: I would just mention in passing, Your Honor, that it's my understanding that the rule under the Speedy Trial Act is that one clock runs for all. And I notice other counsel here representing other defendants. I also understand that all counsel have been given notice of this motion by myself, and also of the hearing date by the court. My understanding is that counsel who are present have no objection to this motion.

THE COURT: In light of the fact that no one has come forward and opposed the motion, the court finds that as a matter of record.

MR. TRAPP: Also, since the court has actually granted the continuance for a bit of time a little bit longer than what defendant Cole has requested, I will certify to the court that I was asking for only the minimal time, which would pretty much put me up against, if not a too early deadline, a quite early deadline, and that really if I didn't have all this time that the court has actually granted, then it would have -- it really would have been a denial of time for effective preparation taking into account due diligence. Thank you very much.

THE COURT: All right, thank you.

Any other matters?

All right, thank you very much, counsel.

(Proceedings concluded at 2:42 p.m.)

* * *

CERTIFICATE OF REPORTER

CITY OF AGANA )
) ss.
TERRITORY OF GUAM )

I, Wanda M. Miles, Official Court Reporter of the District Court of Guam, do hereby certify the foregoing pages 1-19, inclusive, to be a true and correct transcript of the shorthand notes taken by me of the within-entitled proceedings, at the date and time therein set forth.

Dated this 29th day of July, 2005.

/s/ Wanda M. Miles
________________________